**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 25, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LUIS ALBERTO OLIVA-OLIVA;
CECIA RAQUEL OLIVA-LEIVA,

    Petitioners,

v.

PAMELA J. BONDI,[1]*
United States Attorney General,

    Respondent.

No. 25-9511
(Petition for Review)

_____

### ORDER AND JUDGMENT[**]
_____

Before **HARTZ**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Luis Oliva-Oliva and his minor daughter, natives and citizens of Guatemala,

petition for review of the decision of the Board of Immigration Appeals (Board or

_____

\* On February 5, 2025, Pamela J. Bondi became Attorney General of the
United States. Consequently, she has been substituted for Merrick B. Garland as
Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

BIA) affirming the Immigration Judge's (IJ) denial of asylum and withholding of removal.[1]  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny review.

## BACKGROUND

### I.    Legal Background

To qualify for asylum, an applicant must be a "refugee," 8 U.S.C. § 1158(b)(1)(A), (B)(i)—meaning that he is "unable or unwilling to return" to his country of nationality or habitual residence "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42). "These five categories are called 'protected grounds.'"  *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).

"To show persecution or fear of persecution on account of a protected ground, an asylum applicant must establish a nexus between the alleged persecution and a protected ground."  *Miguel-Pena v. Garland*, 94 F.4th 1145, 1159 (10th Cir.) (citation and internal quotation marks omitted), *cert. denied*, 145 S. Ct. 545 (2024). "The protected ground must be 'at least one central reason for persecuting the applicant.'"  *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).  "It cannot be incidental, tangential, superficial, or subordinate to another reason for harm."  *Id.* (brackets and internal quotation marks omitted).

---

[1] Mr. Oliva-Oliva's daughter is a rider on his asylum application.  Because she does not have any independent claims, our discussion focuses on Mr. Oliva-Oliva.

"For withholding [of removal], an applicant must prove a clear probability of persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). "Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Id.*

## II.    Factual Background and Agency Proceedings

Mr. Oliva-Oliva worked in Guatemala as a mason and a farmer. Seasonally he also worked as a day laborer for a branch of the Del Monte Company, operating a machine that irrigated melons. At times irrigation operators needed to coordinate with other operators, so employees knew each other's cell phone numbers.

Mr. Oliva-Oliva traveled to and from work on a motorcycle. One early morning in February 2018, as he was heading home after his overnight shift, three individuals attempted to steal his motorcycle. They first tried to knock him off, and then they chased him with their own motorcycles. Mr. Oliva-Oliva escaped, but he recognized one of the attackers as a co-worker from Del Monte (E.M.).

After the attack, Mr. Oliva-Oliva decided not to return to Del Monte. E.M., who was one of the employees who had his cell phone number, called to ask why he had not come to work. As a result of the conversation, E.M. realized Mr. Oliva-Oliva had identified him as one of the attackers. He threatened to kill Mr. Oliva-Oliva if he reported E.M. to the police. Mr. Oliva-Oliva then began receiving numerous threatening phone calls from different people.

3

Mr. Oliva-Oliva informed managers at Del Monte about the attempted robbery and the threats, but he received no assistance. He did not go to the police because he did not know if they would help him or instead turn him over to the attackers.

In February 2019, Mr. Oliva-Oliva left his town and moved to different departments in Guatemala. In July 2019, he decided to leave Guatemala to come to the United States. He filed applications for asylum and withholding of removal, claiming past persecution and a fear of future persecution as a member of a particular social group he described as "Guatemalans who experience extortion or threats of violence based on their past employment and their inability to obtain state protection." R. vol. 1 at 50 (internal quotation marks omitted).[2]

Mr. Oliva-Oliva testified on his own behalf. The IJ found he was a credible witness and his testimony was adequately corroborated by documentation. He also found that Mr. Oliva-Oliva had an objectively reasonable fear of harm if he returned to Guatemala. But he did not find that the past harm Mr. Oliva-Oliva experienced rose to the level of persecution. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) ("Threats alone generally do not constitute actual persecution[.]"). And he found that Mr. Oliva-Oliva had not established a nexus between his fear of future harm and his proposed particular social group:

> In this case, respondent's testimony and the record taken as a whole does not show that his past employment for the Del Monte corporation is a significant motivating factor for any harm he was threatened with. This was a crime of opportunity, in that [E.M.] and the persons who assisted him

_____

[2] Mr. Oliva-Oliva also sought relief under the Convention Against Torture, but he does not seek review of the agency's denial of that request.

apparently were aware that respondent had a motorcycle because he worked at that same Del Monte facility as [E.M.]. There is nothing that suggests that lead respondent was the victim of a motorcycle attempted theft or the other follow on threats because of his association with the Del Monte corporation. Rather, his association with Del Monte allowed [E.M.] to obtain, through the course of ordinary work business, some contact information for the lead respondent. There is no indication that [E.M.] or the other persons were in any way motivated by an attempt to punish or overcome some characteristic of the lead respondent that has to do with his employment as a melon irrigator at a Del Monte corporation facility. In other words, to the extent lead respondent's employment at Del Monte has anything to do with the case, that is only as an incidental or a tangential factor. But it is not a central reason for the harm he suffered or fears.

R. vol. 1 at 51-52. Accordingly, the IJ denied the applications for asylum and withholding of removal.

Mr. Oliva-Oliva appealed to the Board, which issued a single-member decision. Concluding the IJ's nexus finding was not clearly erroneous, the Board stated, "the fact that [E.M.] may have learned that the respondent had a motorcycle and obtained the respondent's contact information by virtue of their shared employment does not establish that any harm was motivated by the respondent's employment." *Id.* at 4. Because Mr. Oliva-Oliva had not established a nexus to a protected ground, the Board affirmed the determination that he had not established eligibility for asylum or withholding of removal and dismissed the appeal.

## DISCUSSION

### I. Standards of Review

Because a single Board member affirmed in a brief order, we review the Board's opinion rather than the IJ's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds

provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.*

We review legal questions de novo and findings of fact under the substantial-evidence standard. *See Ting Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017). "'The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

## II.    Substantial evidence supports the Board's decision.

Before this court, Mr. Oliva-Oliva challenges only the determination that he failed to show a nexus between the harms he fears and a protected ground. Nexus is a factual determination that we review under the substantial-evidence standard. *See Miguel-Pena*, 94 F.4th at 1159.

As stated, Mr. Oliva-Oliva's proposed particular social group is described as "Guatemalans who experience extortion or threats of violence based on their past employment and their inability to obtain state protection." R. vol. 1 at 50 (internal quotation marks omitted). He argues that E.M. identified him as a target and knew his cell phone number because of his employment at Del Monte. He asserts, therefore, "*but for* [his] employment with Del Monte, he would not have been targeted and persecuted." Pet'r's Opening Br. at 11. The record, however, contains substantial evidence supporting the agency's finding.

Mr. Oliva-Oliva testified that "there was a surge or an uprising of people that were stealing motorcycles . . . approximately from 2016 to 2018." R. vol. 1 at 105.

6

"At first, it was one motorcycle every six months or every eight months," but "[w]hen there was a greater demand, that's when they started stealing more." *Id.* When asked the attackers' motive, he responded, "in Guatemala, we are a very poor people. And these people, since they have no scruples, they just want . . . the easy way out. And so, they steal." *Id.* at 109. And when asked if he believed he was targeted because he worked at Del Monte, he answered, "I don't know. What I do know [is] that it was because of a desire to steal my motorcycle. And later I found out that this gang had spread out . . . to several departments. I don't think that it was because I had been working at the company. Just to steal my motorcycle." *Id.* at 111. He also testified criminals stole motorcycles not only from Del Monte employees, but from independent farms. "[Y]ou'd hear everyday how they had stolen a motorcycle in one place, stolen one from another place. They were stealing motorcycles in different places." *Id.* at 116. Mr. Oliva-Oliva further testified that once he began receiving threats, "[i]t wasn't just about the motorcycle anymore. Rather, silence so they wouldn't be in any danger." *Id.*

Given Mr. Oliva-Oliva's testimony, substantial evidence supports the finding that E.M. and his accomplices targeted him not because he was a Del Monte employee, but because he had something the attackers wanted (the motorcycle). It also supports the finding he was threatened not because he was a Del Monte employee, but because he knew something the attackers wanted kept quiet (E.M.'s identity). In light of these findings, the Board did not err in concluding Mr. Oliva-Oliva failed to establish eligibility for asylum and withholding of removal.

7

*See Miguel-Pena*, 94 F.4th at 1160 ("[T]here is no nexus when there is no evidence that the gang would be hostile toward the targeted individuals absent their financial or recruitment motives." (brackets and internal quotation marks omitted)); *Orellana-Recinos v. Garland*, 993 F.3d 851, 856 (10th Cir. 2021) ("[T]he BIA has made clear that membership in a particular social group should not be considered a motive for persecution if the persecutors are simply pursuing their distinct objectives and a victim's membership in the group is relevant only as a means to an end—that is, the membership enables the persecutors to effectuate their objectives." (emphasis omitted)); *Vatulev*, 354 F.3d at 1209 (stating that "acts of common criminality or personal hostility . . . do not implicate asylum eligibility"). Mr. Oliva-Oliva has not shown that "any reasonable adjudicator would be compelled to conclude to the contrary," as required by § 1252(b)(4)(B).

## CONCLUSION

We deny the petition for review.

Entered for the Court

Allison H. Eid
Circuit Judge