FILED
United States Court of Appeals
Tenth Circuit

**January 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

BALBINA SANCHEZ-CABRERA,

    Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,*

    Respondent.

No. 25-9505
(Petition for Review)

_____

## ORDER AND JUDGMENT**

_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.

_____

Balbina Sanchez-Cabrera is a native and citizen of Mexico who seeks review

of the Board of Immigration Appeals' (BIA) denial of her application for cancellation

of removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition

for review.

---

    * On February 5, 2025, Pamela J. Bondi became Attorney General of the
United States.  Consequently, her name has been substituted as Respondent per
Fed. R. App. P. 43(c)(2).

    ** After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I

Under 8 U.S.C. § 1229b(b)(1), a noncitizen in removal proceedings may seek discretionary relief known as cancellation of removal. To be eligible, the noncitizen must show "removal would result in exceptional and extremely unusual hardship to the [noncitizen's] spouse, parent, or child, who is a citizen of the United States . . . ." § 1229b(b)(1)(D). In assessing hardship, an immigration judge (IJ) considers factors such as the "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (BIA 2002). The hardship determination "requires the assessment of hardship factors in their totality." *Id.* at 472. Although a noncitizen "need not show that such hardship would be unconscionable," it must be "substantially beyond that which would ordinarily be expected to result from the person's departure." *Id.* at 468 (internal quotation marks omitted). If the noncitizen shows the requisite level of hardship and meets the other statutory criteria, the IJ decides whether to favorably exercise his or her discretion and grant relief. *See* 8 U.S.C. § 1229a(c)(4)(A).

II

Ms. Sanchez-Cabrera entered the United States in 1999, and in 2011, she was charged with being present in this country without having been admitted or paroled. *See id.* § 1182(a)(6)(A)(i). She conceded the charge but applied for cancellation of

2

removal, claiming the three youngest of her four children, all of whom are U.S. citizens, would suffer exceptional and extremely unusual hardship.[1]

Before an IJ, Ms. Sanchez-Cabrera testified that her children—YBS, MBS, CSS, and JSS—are 21, 18, 15, and 13 years old, respectively. She told the IJ that YBS lives nearby with her boyfriend and works at a restaurant. MBS and CSS are still in high school, and they both work part time at the same restaurant as YBS. Their income supplements Ms. Sanchez-Cabrera's monthly earnings of approximately $7,500 driving for Uber. She also receives approximately $700 per month in child support, although that income will be reduced by $400 each month when MBS emancipates at 19 years of age.

Additionally, Ms. Sanchez-Cabrera testified that MBS and CSS have several medical conditions. MBS has asthma, prediabetes, oligomenorrhea (irregular menstrual cycle), and depression. She uses an inhaler, takes pills, and sees a doctor every six months to a year for her asthma; the rest of her conditions are monitored. CSS also has prediabetes, as well as a heart murmur. He was last seen by a doctor for the prediabetes six months before the hearing, and he has follow-up appointments every three to four months. He has follow-up appointments with a cardiologist every six months. The medical expenses are covered by Medicaid.

---

[1] Ms. Sanchez-Cabrera's eldest daughter was not a qualifying relative because she was 21 years old. *See In re Isidro-Zamorano*, 25 I. & N. Dec. 829, 830-31 (BIA 2012) ("A 'child' is an unmarried person under twenty-one years of age." (internal quotation marks omitted)).

Apart from these financial and medical issues, Ms. Sanchez-Cabrera testified that her removal would create difficulty for the children regardless of whether they stayed in the U.S. or moved with her to Mexico. She explained that she has an uncle and cousins in the U.S., but they are not close to her, and the children could not stay in the U.S. without her financial support. Consequently, the three youngest children would relocate with her to Mexico, where she has a brother and two sisters, although she is not close to those siblings, either. Additionally, the children have never been to Mexico, only two of them can read and write in Spanish, and none speak Spanish fluently. Although her siblings' children attend school in Mexico, they do not have "the same opportunities" because "[t]he schools there are very different." R. at 244.

In addition to Ms. Sanchez-Cabrera's testimony, the IJ heard expert testimony from Dr. Michelle Kelly, a licensed clinical psychologist with experience treating traumatized children. Dr. Kelly evaluated Ms. Sanchez-Cabrera and her children in 2014, 2016, and 2021. Each evaluation lasted two hours, during which she met with the family collectively to discuss their background, dynamics, aspirations, and culture. Dr. Kelly learned that Ms. Sanchez-Cabrera had been steadfast in providing financial, emotional, and psychological support to the children, which earned their respect. The children's fathers had gone on to start new families, but Ms. Sanchez-Cabrera persevered in caring for them as a single parent. Dr. Kelly testified that the prospect of Ms. Sanchez-Cabrera's removal caused the children to experience anxiety, because rather than focusing on school and enjoying time with friends, they were ruminating about their future insecurities. Dr. Kelly explained that children in

4

their position generally experience insecurities about their home and food; they also have feelings of abandonment and depression, among other things. She pointed out that these children had never been to Mexico, which is not their home or culture. She believed that if Ms. Sanchez-Cabrera were removed and the children stayed in the U.S., they would have no one to support them financially, emotionally, or psychologically. And if they relocated to Mexico, they would leave their native country, their routines, their school and peers, and their language, leaving bleak prospects for improvement. She explained that, based on her experience, children in these circumstances are traumatized because deportation is comparable to losing a parent and, when children are forced to move to a different country, they lose their culture and sense of identity.

After receiving this and other evidence, the IJ determined that Ms. Sanchez-Cabrera was not eligible for relief. The IJ found that neither MBS nor CSS had significant health conditions, MBS's asthma was "mild without complications," and there was insufficient evidence her medication would be unavailable in Mexico. R. at 170. Regarding their financial matters, the IJ distinguished this case from *Recinas*, where the qualifying children were all under the age of 13, *see* 23 I. & N. Dec. at 467. The IJ noted that, here, the children were older and three of them were working and financially contributing to the family, which mitigated their hardship. The IJ also noted Ms. Sanchez-Cabrera receives child support and Medicaid, and although she is not close to her uncle and cousins in the United States, she does have siblings in Mexico. The IJ found the fact that she has siblings in Mexico

distinguishable from *Recinas*, because there, the noncitizen had no family ties to Mexico, *see id.* The IJ observed there was no evidence that Ms. Sanchez-Cabrera's siblings "would not assist in softening her relocation while she attempted to settle herself in Mexico." R. at 172. The IJ acknowledged that removal generally causes stress, anxiety, and sadness for all parties involved. But the IJ pointed out that Dr. Kelly testified these children were experiencing what is normally experienced by children separated from their primary caregivers or when they adapt to a new culture. Consequently, the IJ ruled that, in the aggregate, their hardship was not beyond that which is expected in ordinary removal proceedings.

The BIA affirmed. Noting the IJ's finding that MBS and CSS did not have a significant medical condition, the BIA observed that Ms. Sanchez-Cabrera failed to identify any evidence that medical care would be unavailable for the children in Mexico. The BIA also ruled that the IJ properly considered evidence of the emotional impact Ms. Sanchez-Cabrera's removal would have on the children, including Dr. Kelly's opinion. As the BIA explained, Dr. Kelly testified that the trauma the children were experiencing was to be expected whenever children are "forced to move to an unfamiliar country or [are] being separated from a primary caregiver." R. at 10. Although Ms. Sanchez-Cabrera argued the children faced extreme financial hardship, the BIA noted that "economic detriment is generally insufficient to support a finding of the required hardship." *Id.* at 10-11. Last, the BIA observed there was no basis for finding the children would be deprived of an education in Mexico or access to higher education in the U.S., nor had the IJ failed to

6

consider the hardship factors facing the children in the aggregate.  Consequently, the BIA agreed she failed to show exceptional and extremely unusual hardship.

### III

"When, as here, a single BIA member issues a reasoned decision addressing a petitioner's arguments on appeal, we confine our review to the BIA's decision and will not address the IJ's decision except where the BIA has explicitly incorporated his reasoning." *Miguel-Pena v. Garland*, 94 F.4th 1145, 1153 (10th Cir.) (brackets, ellipsis, and internal quotation marks omitted), *cert. denied*, 145 S. Ct. 545 (2024). "[B]ut we are not precluded from consulting the IJ's more complete explanation of those same grounds" on which the BIA based its decision.  *Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023) (internal quotation marks omitted).

"[A]pplication of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law under § 1252(a)(2)(D)." *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024).  We review legal questions de novo, but because the hardship determination is "primarily factual," "we apply a deferential standard to review the BIA's hardship determination." *Martinez v. Garland*, 98 F.4th 1018, 1021 (10th Cir. 2024) (internal quotation marks omitted).  We do not review "[t]he facts underlying any determination on cancellation of removal." *Wilkinson*, 601 U.S. at 225.  Indeed, "[a]n IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides remain unreviewable." *Id.* "Only the question whether those

7

established facts satisfy the statutory eligibility standard is subject to judicial review." *Id.*

Ms. Sanchez-Cabrera contends the IJ erred in applying the hardship standard because the facts of her case are similar to *Recinas*, where the noncitizen satisfied the statutory hardship standard. In *Recinas*, the noncitizen was a single mother of six children, four of whom were U.S. citizens. 23 I. & N. Dec. at 469. All her family lived in the U.S., she had no close relatives in Mexico, and her mother, who lived five minutes away, watched the children while she worked. *Id.* at 469-70. The children's father was not involved in the children's lives and apparently paid no child support, but the noncitizen ran her own profitable business. *Id.* at 470. None of her children had ever traveled to Mexico, and two of her children who were U.S. citizens had difficulty speaking Spanish and were unable to read or write Spanish. *Id.*

Ms. Sanchez-Cabrera argues that, as in *Recinas*, her "children are almost entirely dependent on her for support." Pet'r's Br. at 7. But the IJ distinguished *Recinas* on the grounds that, unlike that case, the children here are all above the age of 13, two work part time, Ms. Sanchez-Cabrera receives $700 per month in child support (until MBS turns 19), and her eldest daughter is living on her own. Ms. Sanchez-Cabrera points out that the children's earnings "would not generate nearly enough income for a four-person household," *id.*, but we do not review findings relative to her level of support, *Wilkinson*, 601 U.S. at 225. And in any event, this point is irrelevant because, as the BIA noted, she testified the children would move with her to Mexico. R. at 10 n.2.

8

Ms. Sanchez-Cabrera also asserts the IJ found that her uncle and cousins "would be able to help shoulder some of the financial burden if [she] was removed." Pet'r's Br. at 8.  But the IJ made no such finding.  The IJ found she "has family in the United States that she does not appear to be close to," but "she does have three siblings who remain in Mexico."  R. at 171.  The IJ observed there was no evidence that her siblings "would not assist in softening her relocation."  *Id.* at 172.  The IJ determined this was another distinguishing feature of this case, because in *Recinas*, the noncitizen's entire family had relocated to the U.S., and she had no close family members in Mexico, 23 I. & N. Dec. at 469.  Ms. Sanchez-Cabrera does not explain how the IJ's finding and determination undermines the hardship calculation.

Next, Ms. Sanchez-Cabrera argues that the IJ failed to consider the educational difficulties facing the children in Mexico.  The deprivation of "all schooling or of an opportunity to obtain any education" is a measure of economic hardship, but "economic detriment is generally insufficient to support a finding of the required hardship." *In re J-J-G-*, 27 I. & N. Dec. 808, 814 (BIA 2020) (internal quotation marks omitted).  Here, the BIA acknowledged the children's academic performance could be disrupted by Ms. Sanchez-Cabrera's removal, but it determined there was no evidence the children would be denied an education in Mexico or access to higher education in the U.S.  Although Ms. Sanchez-Cabrera emphasizes the emotional trauma the children will endure transitioning to Mexico, insisting they "know no other way of life," Pet'r's Br. at 9 (internal quotation marks omitted), the BIA recognized Dr. Kelly testified that the emotional toll these proceedings are having on

9

the children is to be expected whenever children are forced to relocate to a new country.  Their common experience with others undermines her claimed hardship.  *See Wilkinson*, 601 U.S. at 222 (recognizing the claimed hardship must be "substantially different from, or beyond, that which would normally be expected from the deportation of a close family member" (brackets and internal quotation marks omitted)).

Finally, Ms. Sanchez-Cabrera contends the IJ failed to consider the "totality of the burden" her children will face in Mexico.  Pet'r's Br. at 8.  But the IJ repeatedly and expressly ruled that, in "the aggregate," their claimed hardship is not exceptional or extremely unusual.  R. at 171, 172.  Hence, the BIA rejected Ms. Sanchez-Cabrera's argument that the IJ failed to consider the hardship factors in the aggregate.  Our review of the record confirms the agency properly evaluated the hardship factors in the aggregate.

IV

Accordingly, the petition for review is denied.

Entered for the Court

Nancy L. Moritz
Circuit Judge