**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SABINO AGUILAR-HERNANDEZ,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 23-9600
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **ROSSMAN**, Circuit Judges.

_____

Petitioner Sabino Aguilar-Hernandez is a citizen of Mexico. In removal proceedings, an immigration judge denied his applications for asylum, restriction on removal, and protection under the Convention Against Torture. The Board of Immigration Appeals dismissed his appeal. He now petitions for review of the Board's decision. We deny his petition.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Born in Xalapa, Mexico, Petitioner entered the United States in 2001.  In removal proceedings, he conceded his removability and applied for asylum, restriction on removal, and protection under the Convention Against Torture.

To receive asylum, an applicant must show that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(B)(i).  A refugee is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on account of any of five protected grounds:  race, religion, nationality, political opinion, or membership in a particular social group.  *Id.* § 1101(a)(42); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).  The protected ground must "be at least one central reason for persecuting the applicant."  § 1158(b)(1)(B)(i).  To qualify for restriction on removal, an applicant must show a clear probability of persecution because of one of those same five protected grounds.  *See Rodas-Orellana*, 780 F.3d at 987.

The "Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official."  *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (internal quotation marks omitted). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R.

2

§ 1208.18(a)(7). This standard does not require the government's actual knowledge or willful acceptance; willful blindness is enough. *Karki*, 715 F.3d at 806.

Petitioner feared returning to Mexico because of a gang called the Zetas. The gang extorted Petitioner's sisters, who own businesses in his hometown. The gang also robbed one of the sisters. During the robbery, the sister was hit with a gun, and she still experiences a "nervous tick" from the incident. R. at 140. The gang tried to extort a business where Petitioner's nephew worked. The business then closed, and the family had not heard from the nephew in several months at the time of Petitioner's testimony in immigration court. The family had not reported the nephew's disappearance out of fear that the Zetas would retaliate. Citing that same fear, Petitioner's sisters refused to write letters for him to use in his removal proceedings.

Petitioner feared the Zetas would target him because they believe people returning to Mexico from the United States have a lot of money. He testified that the Zetas target people if they believe they can get money from them. And he agreed that his sisters were targeted because they are a source of money to the gang.

To support his asylum and restriction-on-removal applications, Petitioner claimed to fear persecution on account of his membership in three particular social groups: (1) members of the Aguilar-Hernandez family, (2) members of the Aguilar-Hernandez family who are known business owners, and (3) members of families that own businesses in Xalapa, Mexico. The immigration judge concluded that these were not cognizable particular social groups and that, in any event,

3

Petitioner had not shown he would be targeted based on his membership in any of them. In other words, the immigration judge concluded, Petitioner's membership in those groups would not "be at least one central reason for" any persecution he fears. § 1158(b)(1)(B)(i). That conclusion stemmed from the finding that the Zetas had targeted Petitioner's sisters because they believed the sisters had access to cash and the ability to comply with extortion demands. For those reasons, the immigration judge denied Petitioner's asylum application. The immigration judge then concluded that the asylum analysis necessarily foreclosed restriction on removal because restriction requires an even greater likelihood than asylum of persecution because of a protected ground. *See Rodas-Orellana*, 780 F.3d at 986–87.

In evaluating the application for protection under the Convention Against Torture, the immigration judge recognized the "rampant gang activity" in Petitioner's hometown. R. at 72. But the immigration judge denied relief, based in part on his conclusion that the record did not support a finding that a public official had engaged in the criminal activity, consented to it, instigated it, or acquiesced in it. In doing so, the immigration judge noted the absence of evidence that police knew about the things that had happened to Petitioner's sisters and nephew.

The Board dismissed Petitioner's appeal. It upheld the immigration judge's finding that the gang members who had harmed Petitioner's family in Mexico "did so due to general criminal behavior, including a criminal desire to enrich themselves, rather than on account of a protected ground." R. at 4. Moreover, it concluded that the immigration judge did not need to treat this as a mixed-motive case because

Petitioner presented insufficient evidence that his family membership was "one central reason" for his claimed fear. *Id.* (internal quotation marks omitted). The Board also upheld the immigration judge's decision that Petitioner "failed to demonstrate a likelihood of future torture in Mexico." *Id.* The Board rejected Petitioner's argument that the immigration judge had denied protection under the Convention Against Torture based on the false legal premise that his family's failure to report the Zetas' crimes prevented a showing that Mexican authorities would acquiesce in his torture. Although the Board acknowledged evidence of corruption and crime in Mexico, it determined that the "government's alleged ineffectiveness in controlling corruption and crime, without more, is insufficient to establish that the government would acquiesce in" Petitioner's torture. *Id.*

## II. Discussion

A single Board member issued a brief order affirming the immigration judge's decision. So the Board's affirmance is the final agency decision, and we limit our review to the grounds appearing in the Board's decision. *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1360 (10th Cir. 2019). We may, however, consult the immigration judge's fuller explanation of those grounds. *Id.*

We review the Board's legal conclusions de novo. *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review its factual findings for substantial evidence, meaning we will treat those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

5

**A. Asylum**

The Board saw "no clear error in the Immigration Judge's finding that the gang members who robbed and extorted [Petitioner's] sisters and caused the disappearance of his nephew did so due to general criminal behavior, including a criminal desire to enrich themselves, rather than on account of a protected ground." R. at 4.  Petitioner argues that the Board erred by reviewing the immigration judge's finding for clear error rather than de novo.  We review de novo whether the Board applied the correct standard.  *See Xue v. Lynch*, 846 F.3d 1099, 1106 (10th Cir. 2017).

"The Board will not engage in de novo review of findings of fact determined by an immigration judge."  8 C.F.R. § 1003.1(d)(3)(i).  It will review factual findings only for clear error.  *Id.*  But it "may review questions of law, discretion, and judgment and all other issues" de novo.  § 1003.1(d)(3)(ii).

We conclude the Board applied the correct standard.  "A persecutor's actual motive is a matter of fact," and the Board reviews an immigration judge's finding on that score for clear error.  *Matter of N-M-*, 25 I. & N. Dec. 526, 532 (B.I.A. 2011).  The Board's decision here did exactly that.

Petitioner's reliance on *Matter of S-E-G-* reveals no error in the Board's analysis.  In *Matter of S-E-G-*, the Board characterized as a legal issue "whether the respondents were persecuted 'on account of' a protected ground."  24 I. & N. Dec. 579, 588 n.5 (B.I.A. 2008).  But the context surrounding that characterization makes clear that the relevant facts before the Board in *Matter of S-E-G-* were "not in

6

dispute." *Id.* In other words, in that case, the Board treated as a legal question whether a set of undisputed facts met a legal standard (the requirement that persecution be on account of a protected ground). That is not the question the Board reviewed for clear error in this case. Here, the Board reviewed for clear error the immigration judge's finding about the Zetas' actual motives. That is apparent from both the language the Board used and its citation to *Matter of N-M-* for the proposition that it reviews findings about a persecutor's actual motive for clear error. R. at 4. In reviewing the Zetas' actual motive, the Board appropriately used the clear-error standard.

Petitioner next argues that the Board erred when it concluded that insufficient evidence supported treating this as a mixed-motives case. We have recognized that "a persecutor can have multiple motives for targeting someone." *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021). If a "protected ground is intertwined with unprotected reasons," then an applicant can obtain asylum only if the protected ground is a central reason for the feared harm. *Id.* (internal quotation marks omitted). Petitioner fails to identify evidence compelling the conclusion that his membership in a particular social group would be one central reason for his persecution by the Zetas. True enough, Petitioner testified that the gang threatened to kill members of his sister's family (her children). But Petitioner points to "no evidence that the gang would be hostile toward" his family "absent their financial" motive. *Id.* at 858.

**B. Restriction on Removal**

Petitioner asserts that the Board erred in reviewing his restriction-on-removal application for the same reasons it erred in reviewing his asylum application. As we have explained, however, those reasons reveal no error in the Board's decision.

**C. Convention Against Torture**

Petitioner argues the record shows that the Mexican government would be willfully blind to the torture he fears from the Zetas. In addition to disputing the merits of this argument, the government urges us not to consider it because Petitioner failed to exhaust it before the Board. We conclude that Petitioner exhausted his argument, but it fails on the merits.

"It is a fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010), *abrogated in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). Indeed, we "may review a final order of removal only if" the noncitizen has exhausted all administrative remedies available "as of right." 8 U.S.C. § 1252(d)(1). This statute requires a noncitizen to do more than "level broad assertions in a filing before the Board." *Garcia-Carbajal*, 625 F.3d at 1237 (internal quotation marks omitted). We consider an argument exhausted only if the noncitizen presented "the *same specific legal theory* to the" Board that he or she presents in court. *Id.*

Petitioner exhausted his willful-blindness argument.  Granted, willful blindness emerged as the centerpiece of his Convention Against Torture claim only in his brief to us.  Before the Board, Petitioner focused on whether his family's failure to report the Zetas' crimes foreclosed a finding of government acquiescence.  But he also argued that the Mexican government would indeed acquiesce in his torture.  And he correctly noted that willful blindness is a form of acquiescence.  More than that, though, he explicitly asserted that the immigration judge erred in determining he "failed to show that the police or authorities were willfully blind to the situation." R. at 38 (internal quotation marks omitted).

The flipside of the government's claim that Petitioner failed to exhaust the willful-blindness issue is Petitioner's own claim that he raised it but received no ruling from the Board.  In fact, Petitioner says, neither the immigration judge nor the Board considered willful blindness.  Not so.  The immigration judge explicitly considered whether "the police or authorities were willfully blind to the situation." R. at 72.  And the Board found no error in the immigration judge's decision that Petitioner "failed to demonstrate a likelihood of future torture in Mexico."  R. at 4. The Board followed this statement with a citation to the pages of the immigration judge's decision containing his entire Convention Against Torture discussion.  The Board's decision therefore reflects its agreement with the entirety of the immigration judge's Convention Against Torture analysis.  Moreover, the Board's decision explicitly addressed acquiescence, a concept that includes willful blindness. *See Maatougui v. Holder*, 738 F.3d 1230, 1242–43 (10th Cir. 2013) (recognizing that the

Board need only "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted" (internal quotation marks omitted)).

Turning to the merits, we cannot disturb the Board's finding that the record contains insufficient evidence to establish that the Mexican government would acquiesce in Petitioner's torture. Petitioner highlights country-conditions evidence reporting that state officials had colluded in violent acts and had even committed such acts themselves. At the same time, however, the record contains evidence that the Mexican government has committed to fight corruption and violence. On balance, the record does not compel the conclusion that the Mexican government would acquiesce—through willful blindness or otherwise—in Petitioner's torture.

### III. Disposition

The petition for review is denied.

Entered for the Court

Jerome A. Holmes
Chief Judge