FILED
United States Court of Appeals
Tenth Circuit

April 5, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANA RUTH ORELLANA-RECINOS;
KEVIN AMILCAR ROSALES-
ORELLANA,

      Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,[*]

      Respondent.

No. 19-9596

_____

**Petition for Review of an Order from the
Board of Immigration Appeals**
_____

Sharon L. Preston of Preston & Brar, LLC, Salt Lake City, Utah, for Petitioners.

Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation (Ethan P.
Davis, Acting Assistant Attorney General, Civil Division, Margot Carter, Senior
Litigation Counsel, Office of Immigration Litigation, with him on the brief), United
States Department of Justice, Washington, D.C., for Respondent.
_____

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

---

[*] Merrick B. Garland, United States Attorney General, has been substituted for
William P. Barr as the respondent.  *See* Fed. R. App. P. 43(c)(2).

Petitioners Ana Orellana-Recinos and her son, Kevin Rosales-Orellana, natives and citizens of El Salvador, seek review of the decision of the Board of Immigration Appeals (BIA) dismissing their appeal of the denial by the immigration judge (IJ) of their applications for asylum. They contend that they were persecuted because of their membership in a particular social group: namely, Kevin's immediate family. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny review. Even assuming that Kevin's immediate family qualifies as a particular social group under the Immigration and Nationality Act, the BIA properly found that Petitioners were not persecuted "on account of" their membership in that group. In addition, we reject the government's argument that we lack jurisdiction to review Petitioners' challenge to the BIA's decision.

## I.      BACKGROUND

Four incidents prompted Petitioners to flee El Salvador for the United States. Twice, members of the MS-13 gang approached Kevin at school and pressured him to sell drugs for the gang. The third incident was a phone call in which someone who Ms. Orellana-Recinos "believed was a gang member" called Petitioners' home phone and told Ms. Orellana-Recinos that she should convince her son to sell drugs for the gang. App. at 50. Before she ended the call the gang member threatened her, saying that "[i]f your son refuses, the two of you will pay." *Id.* at 54 (internal quotation marks omitted). The fourth incident occurred at Petitioners' home. Five gang members "stood outside and held weapons for approximately a half an hour." *Id.* at 50.

2

Apparently there are three members of Kevin's immediate family. In addition to him and his mother, he has a married adult sister who lived in the same area as Petitioners during these incidents. The MS-13 gang has not threatened or harmed the sister.

After entering the United States, Petitioners were charged with being removable and appeared before the IJ. They conceded removability but sought asylum, with Ms. Orellana-Recinos filing her own asylum application and Kevin, who was 16 years old at the time of the IJ's decision in March 2018, joining his mother's application as a rider.[1] *See* 8 U.S.C. § 1158(b)(3)(A), (B) (permitting unmarried children under the age of 21 to join parent's asylum application).

As part of her asylum claim Ms. Orellana-Recinos contended that the MS-13 gang's threatening phone call and the appearance of gang members outside her home constituted past persecution and gave rise to a well-founded fear of future persecution. "[T]o establish eligibility for asylum on the basis of past persecution, an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Niang v. Gonzales*, 422 F.3d 1187, 1194–95 (10th Cir. 2005) (internal quotation marks omitted); *see* 8 U.S.C. § 1101(a)(42)(A). The protected

---

[1] Petitioners also sought withholding of removal and relief under the Convention Against Torture. But they have not pursued those avenues of relief in this court.

3

grounds are "race, religion, nationality, . . . political opinion," and, as relevant here, "membership in a particular social group." § 1101(a)(42)(A).

The particular social group asserted by Ms. Orellana-Recinos was the "immediate family of Kevin Rosades-Orellana." App. at 52 (internal quotation marks omitted). She argued that the gang members threatened her so that they could ultimately control her son. Therefore, in her view, the threats were on account of her being his mother.

The IJ denied all claims for relief. Although he determined that Ms. Orellana-Recinos alleged a cognizable social group and testified credibly, he denied asylum because the evidence was "insufficient to indicate that the harm [she] suffered or fears would be on account of her membership in that group." *Id.* at 54.

The IJ noted that the nexus between persecution and social group "is not established simply because a particular social group of family members exist[s], and the family members experience harm." *Id.* at 53. And, he said, "[t]he fact that a persecutor targets a family member simply as a means to an end is not by itself sufficient to establish a claim, especially if the end is not connected to another protected ground." *Id.* (internal quotation marks omitted). When considering the threatening phone call, the IJ explained that the gang member's threat—"[i]f your son refuses, the two of you will pay"—suggested that "the purpose of the gang's targeting was because the son would not join in their recruitment," and that her son's recruitment to the gang was the "ultimate motivation." *Id.* at 54 (internal quotation marks omitted). Therefore, the IJ continued, "the gang was not motivated by an

4

animus against the family. Rather, . . . the motivation was to punish [Petitioners] for [Kevin's] not participating in their criminal activity." *Id.*

The IJ also explained that the fact that the gang did not harm or threaten Ms. Orellana-Recinos's adult daughter implied the absence of particular animus against the family. The IJ "believe[d] that were the gang truly motivated out of animus against the family, that it would be reasonable to assume that they would have taken that animus out o[n] the daughter just as well as the [mother]." *Id.* at 54–55. Taking all the evidence together, the IJ concluded that the MS-13 gang targeted Ms. Orellana-Recinos because it "was the best way to get to [her] son," and not because she is a member of her son's immediate family. *Id.* at 55.

Petitioners filed with the BIA a notice of appeal asking the Board to reverse the IJ's decision denying asylum. The notice of appeal stated that the IJ erred when he determined that the gang's "purpose in [persecuting Ms. Orellana-Recinos ] was not just because of [her] relationship to [her] son," and that the IJ should have instead concluded that the gang targeted her only because of her family status. *Id.* at 31. But the BIA ruled that the IJ did not clearly err when he determined that the "gang members targeted [Ms. Orellana-Recinos] in order to reach her son . . . and to punish them for his refusal to sell drugs on their behalf." *Id.* at 3. It noted that although "widespread violence is a serious problem in El Salvador," the presence of gang violence was not a basis for relief by itself. *Id.* at 3. Accordingly, the BIA dismissed the appeal.

5

## II.   DISCUSSION

### A.   The Merits

To be eligible for asylum a person must establish "persecution or a well-founded fear of persecution *on account of* race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A) (emphasis added).  It is necessary that the applicant for asylum establish that one of the listed protected grounds "was or will be at least one central reason for persecuting the applicant."  *Id.* at § 1158(b)(1)(B)(i).  This means that "the protected ground cannot play a minor role in the [applicant's] past mistreatment or fears of future mistreatment.  That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm."  *In re J-B-N-*, 24 I. & N. Dec. 208, 214 (BIA 2007).  Of course, a persecutor can have multiple motives for targeting someone.  *See Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (considering petitioner's "mixed-motive" claim); *Singh v. Mukasey*, 543 F.3d 1, 5 (1st Cir. 2008) ("In many cases . . . persecutors may have more than one motivation.").  But even when the protected ground is "intertwined" with unprotected reasons, the protected ground must still be a central reason.  *Alvarez-Lagos v. Barr*, 927 F.3d 236, 250 (4th Cir. 2019) (internal quotation marks omitted).

Petitioners do not argue that the BIA applied an incorrect legal framework; they challenge only the BIA's factual findings, arguing that the Board erred in determining that there was no nexus between the gang's threats and Ms. Orellana-Recinos's status as a member of her son's immediate family.  Petitioners bear the

6

burden of persuasion, *see* 8 U.S.C. § 1158(b)(1)(B)(i), and must provide direct or circumstantial evidence of the persecutors' motives, *see INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). We will affirm the BIA's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Dallakoti*, 619 F.3d at 1267 (internal quotation marks omitted). Although we limit our review to the grounds relied on by the BIA, "we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

Whether the persecution suffered or feared by applicants was "on account of" their membership in a particular social group has been a regular subject of consideration by the federal appellate courts. We observed in *Niang* that the BIA reasonably interpreted "persecution on account of membership in a particular social group to mean persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic." 422 F.3d at 1199 (internal quotation marks omitted). Stated differently, persecution is not on account of membership in a particular social group unless the reason for the persecution is the "common, immutable characteristic" that defines the group. *Id.* Thus, "[f]or persecution to qualify as on account of, the applicant must possess a protected characteristic and that protected characteristic must have motivated the persecutor to harm the applicant." *Li v. Ashcroft*, 356 F.3d 1153, 1160 (9th Cir. 2004) (internal quotation marks omitted).

The federal immigration statute "'makes motive critical' to obtaining asylum." *Rodas-Orellana v. Holder*, 780 F.3d 982, 996 (10th Cir. 2015) (quoting *Elias-Zacarias*, 502 U.S. at 483); *see Rivera-Barrientos v. Holder*, 666 F.3d 641, 647 (10th Cir. 2012) (although "[s]ome evidence" supported claim that the gang attacked petitioner because of her political beliefs, BIA could properly conclude that the central reason for the attack was her refusal to join the gang; BIA's conclusion was supported by the gang's further attempts to recruit her even after she was attacked). We think the decision in *Lingeswaran v. United States Att'y Gen.*, 969 F.3d 1278 (11th Cir. 2020) is particularly instructive. Affirming the BIA, the court said that even if "the Sri Lankan army only arrested and attacked Tamils" during the civil war with the Tamil Tigers, an organization "composed of ethnic Tamils[,] . . . that evidence, by itself, does not prove that the military was arresting people on account of their ethnicity rather than their involvement with a terrorist organization." *Id.* at 1289. One could say that the government would not have arrested someone if he were not a Tamil (since only Tamils were Tamil Tigers); but the IJ could properly find that the arrest was solely on account of the further fact that the person belonged to the Tamil Tigers. *See also Adhiyappa v. INS*, 58 F.3d 261, 268 (6th Cir. 1995) (even though a separatist organization persecuted its political opponents, BIA could properly find that petitioner was targeted because he was a government informant, not on account of his political beliefs).

The lack of persecution of other persons who share the protected ground does not conclusively establish that the persecution is not on account of the protected ground. *See W.G.A. v. Sessions*, 900 F.3d 957, 967 (7th Cir. 2018) ("[I]t was

8

improper for the immigration judge to rely on a lack of harm to other family members, without more, to find that W.G.A. was not targeted on account of his kinship ties.").  But it is probative.  *See Gomez-Rivera v. Sessions*, 897 F.3d 995, 999 (8th Cir. 2018) ("While [petitioner] is correct that he need not prove all family members were persecuted, the lack of persecution faced by his sister bolsters the conclusion that the gangs were not seeking out police officers' families." (citation omitted)); *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 353 (5th Cir. 2002) ("The fact that a persecutor has not opposed other members of the same group suggests that the persecution was not on account of that group membership.").

Consistent with the above recitation of the governing law, the BIA has made clear that membership in a particular social group should not be considered a *motive* for persecution if the persecutors are simply pursuing their distinct objectives and a victim's membership in the group is relevant only as a means to an end—that is, the membership enables the persecutors to effectuate their objectives.  *See Matter of L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017), *reversed in part on other grounds but affirmed on this ground by Matter of L-E-A-*, 27 I. & N. Dec. 581, 596–97 (U.S. Att'y Gen. 2019).  In *Matter of L-E-A-*, members of a criminal cartel approached the applicant's father about selling drugs out of his store in Mexico City, "which the cartel viewed as a favorable distribution location."  27 I. & N. Dec. at 41.  When the father refused, the cartel approached the applicant and asked him "if he would sell drugs for them at his father's store because they liked the store's location."  *Id.*  The applicant declined, and the following week masked cartel members tried to force him into their

9

car in an apparent attempted kidnapping.  *See id.*  The applicant then left Mexico for the United States.  *See id.*  His father continued operating his store, but he began paying "rent" to the cartel and the family was not "subjected to additional incidents of harm."  *Id.* (internal quotation marks omitted).  In his immigration proceedings the applicant argued that the cartel targeted him "because of his membership in the particular social group comprised of his father's family members."  *Id.*  But the BIA rejected the argument, explaining:

> [N]exus is not established simply because a particular social group of family members exists and the family members experience harm.  Thus, the fact that a persecutor has threatened an applicant and members of his family does not necessarily mean that the threats were motivated by family ties. . . . *[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim*, especially if the end is not connected to another protected ground.

*Id.* at 45 (emphasis added).  Applying this proposition to the facts of the case, the BIA stated:

> As the [IJ] determined, the [applicant] was targeted only as a means to achieve the cartel's objective to increase its profits by selling drugs in the store owned by his father.  Therefore, the cartel's motive to increase its profits by selling contraband in the store was one central reason for its actions against the [applicant] and his family.  *Any motive to harm the [applicant] because he was a member of his family was, at most, incidental.  In this regard, we point out that the evidence does not indicate that the persecutors had any animus against the family or the [applicant] based on their biological ties, historical status, or other features unique to that family unit.*

*Id.* at 46–47 (emphasis added) (footnotes and citations omitted).[2]

---

[2]  As an example of persecution based on membership in a family unit, the BIA pointed to the Bolshevik assassination of Czar Nicholas II's immediate family

10

Petitioners did not challenge, or even cite, *Matter of L-E-A-* in their brief to this court. And at oral argument they cited it as authority. As previously noted, they dispute only the BIA's factual findings in their case, not the legal framework it applied.

Petitioners argue that the MS-13 gang persecuted Ms. Orellana-Recinos on account of her membership in the "immediate family of Kevin Rosades-Orellana." App. at 52 (internal quotation marks omitted). They contend that her "role as Kevin's mother is inextricably intertwined with her refusal to allow him to join the gangs. . . . They called her and then stood outside her house with guns, not because of anything she did even, but simply because as Kevin's mother, she was precisely and only the person who was his caretaker and guardian." Aplt. Br. at 6. Therefore, Petitioners reason, the gang's threats to Ms. Orellana-Recinos are inherently threats on account of family status.

But the IJ, citing *Matter of L-E-A-* in support, found that the MS-13 gang's phone call to Ms. Orellana-Recinos belies this argument. The gang member told Ms. Orellana-Recinos that she and her son would pay if Kevin refused to join the gang. The IJ could properly infer that the gang's "ultimate motivation" was to recruit Kevin, not to attack his family. App. at 54. In other words, it would be reasonable to

members. Even though "there were political reasons why [the entire immediate family was] endangered and killed, it would be difficult to say . . . that their family membership was not at least one central reason for their persecution." *Id.* at 44; *see also id.* at 45 (discussing cases "where the family status is connected to another protected ground").

11

find that the gang members had no animus against Kevin's family per se. They would have the same attitude toward anyone—teacher, good friend, employer—who they thought could influence Kevin to join the gang. There is no evidence that if Kevin decided to join, the gang would still pursue Ms. Orellana-Recinos or any other member of his family. Indeed, the very fact that the gang continued to try to convince Kevin to become a member is inconsistent with hostility to him because of his family. *See Rivera-Barrientos*, 666 F.3d at 647 ("The BIA's conclusion [that the petitioner was attacked for her refusal to join the gang] is supported by the fact that after the attack, the gang members again pressured [her] to join the gang and later visited her house repeatedly, stating their intention of recruiting her.").

The present appeal is markedly similar to *Matter of L-E-A-*. In both cases a gang was threatening family members as a means to achieve an end that was unrelated to a protected ground. *See Matter of L-E-A-*, 27 I. & N. Dec. at 46–47. And in both cases there was no evidence that the gang would be hostile toward the targeted families absent their financial or recruitment motives. *See id.* Also supportive of the IJ's finding that the gang's motive was not hostility toward the family unit is that the gang did not threaten Ms. Orellana-Recinos's daughter. The findings by the IJ and BIA in this case that there was no nexus between the persecution and the asserted social group were therefore sound.

Petitioners rely on the Fourth Circuit's opinion in *Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015), which is factually similar to this case. Ms. Hernandez and her son fled El Salvador after the Mara 18 gang repeatedly threatened to kill Ms.

Hernandez if she did not allow her son to join the gang. *See id.* at 947. When seeking asylum Ms. Hernandez asserted that she and her son belonged to a particular social group—her "nuclear family." *Id.* at 949. The IJ denied her claim and the BIA affirmed because the evidence showed that the gang's motivation was to recruit the son, not animus toward the family. *See id.* The Fourth Circuit reversed, explaining that "Hernandez's relationship to her son is why she, and not another person, was threatened." *Id.* at 950. It said that "[t]he BIA's conclusion that these threats were directed at her not because she is his mother but because she exercises control over her son's activities draws a meaningless distinction under these facts," *id.*, since the gang's threats to the mother "were meaningful only because of her maternal authority over her son's actions," *id.* at 950 n.7. Thus, Hernandez's relationship to her son was "at least one central reason for her persecution." *Id.* at 950 (emphasis omitted).

To the extent that the Fourth Circuit's opinion holds that a gang's threats to persuade a mother to encourage, or at least allow, a son to join the gang is necessarily persecution on account of the mother's membership in the son's nuclear family, we are unpersuaded. The IJ and the BIA could infer that there was no animus toward Kevin's family. Even if we assume that Ms. Orellana-Recinos was threatened by the gang only because she had influence over Kevin as his mother, the IJ and BIA could properly find that the threat was motivated solely by an interest in having Kevin join the gang. If he did join, she would not be at risk. We hold that under the legal framework of *Matter of L-E-A*, the IJ and BIA could properly find on this record that

13

Petitioners were not persecuted, and lacked a well-founded fear of future persecution, on account of their membership in Kevin's immediate family.

## B. Jurisdiction

As a final matter, we address the government's argument that we lack jurisdiction over this petition. It points out that Petitioners did not file an appellate brief with the BIA and contends that the lack of this brief means that Petitioners "did not present any legal theory" to the BIA. Aplee. Br. at 23. It relies on the proposition that a petitioner "must present the same specific legal theory to the BIA before he or she may advance it in court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (emphasis omitted); *see* 8 U.S.C § 1252(d) (requiring alien to exhaust all administrative remedies available to the alien as of right).

Our review is de novo. *See Huerta v. Gonzales*, 443 F.3d 753, 755 (10th Cir. 2006) ("[W]e review issues of jurisdiction de novo."). In our view the lack of an appellate brief to the BIA does not by itself deprive us of jurisdiction. To begin with, the BIA's practice manual does not require an appellate brief; it requires only that the notice of appeal state "whether or not a brief will be filed" and provides space on the notice of appeal for a statement "to identify the grounds for the appeal." U.S. Dep't of Just., *Board of Immigration Appeals Practice Manual* § 4.4(b)(iv)(C), (D) (2020), https://www.justice.gov/eoir/page/file/1284741/download. Here, Petitioners' notice of appeal to the BIA adequately presented their legal theory. Their notice stated that the IJ "made a mistake" when he concluded that the MS-13 gang targeted Ms. Orellana-Recinos "not just because of [her] relationship to [her] son." App. at 31.

14

Petitioners then stated that the gang "had no other reason to hurt [her] except that [she is] a family member" of her son. *Id*. This is the same challenge Petitioners present to this court—that the IJ's nexus analysis was erroneous.

Further, the BIA's opinion belies the government's argument. The BIA considered and rejected Petitioners' nexus challenge, but it declined to consider the claim under the Convention Against Torture, because Petitioners did "not meaningfully challenge[]" the relevant IJ findings. *Id.* at 3. The BIA was obviously mindful of what Petitioners did and did not challenge, and it determined that Petitioners' notice of appeal adequately presented their nexus challenge. Because Petitioners presented the same legal theory to the BIA that they do before this court, we reject the government's argument that we lack jurisdiction. *See Garcia-Carbajal*, 625 F.3d at 1237.

### III.  CONCLUSION

We **DENY** the petition for review.