**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

FRANCIELY DE SOUZA PINTO;
NICOLAS SOUZA-RODRIGUES,

Petitioners,

v.

MERRICK B. GARLAND, United
States Attorney General,

Respondent.

No. 23-9605
(Petition for Review)

_____

**ORDER AND JUDGMENT\***
_____

Before **CARSON**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

Petitioners Franciely de Souza Pinto and her minor son, Nicolas
Souza-Rodrigues, are natives and citizens of Brazil who entered the United
States on December 14, 2021. On July 22, 2022, de Souza Pinto filed an
application for asylum and for withholding of removal under the
Immigration and Nationality Act (INA), §§ 208, 241(b)(3), as amended,
8 U.S.C. §§ 1158, 1231(b)(3), as well as for protection under the United

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Federal Rule of
Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Nations Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18.[1] On June 7, 2023, the Immigration Judge (IJ) denied the application, and on October 24, 2023, the Board of Immigration Appeals (BIA) affirmed the IJ's decision and dismissed her appeal.

In this appeal, de Souza Pinto argues that the BIA erred by (1) affirming the IJ's finding that she failed "to establish a nexus between her persecution and protected grounds"; (2) adopting the IJ's holding that, under the INA, "the term 'young women' is insufficiently particularized" to define a particular social group; and (3) affirming the IJ's denial of withholding of removal. Op. Br. at 8–9. The Government focuses most of its arguments on the first issue raised on appeal. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition for review.

## I

De Souza Pinto was born in Minas Gerais, Brazil, and is a citizen of Brazil.[2] In October 2017, de Souza Pinto met Jorge Barbosa de Oliveira (Oliveira). At the time, de Souza Pinto was sixteen years old, and Oliveira was twenty-four years old. Two weeks after meeting, Oliveira began

---

[1] Nicolas sought asylum as the child of an asylum applicant and a derivative applicant. *See* 8 U.S.C. § 1158(b)(3)(A).

[2] We draw the facts from the IJ's June 2023 written decision and the BIA's October 2023 order. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). Additionally, the facts are uncontested by the parties.

cohabitating with de Souza Pinto, her mother, aunt, and grandmother in her grandmother's home.

After three months, the relationship began to deteriorate. Oliveira became "emotionally and physically violent" and began controlling de Souza Pinto's "dress, movements, and contact with others." R. I at 68–69, 117–18. For example, when Oliveira accompanied de Souza Pinto to the market, he became "very jealous because there were many men around," and when they returned home, "he was very furious, he was hitting the wall . . . [h]e said that that was never going to happen again." *Id.* at 121. De Souza Pinto testified that Oliveira would "pull [her] hair, push her, and hit her all over her body, including her eyes, stomach, and arms," and his "physical abuse left bruises and made her bleed." *Id.* at 69.

De Souza Pinto became suspicious and fearful that Oliveira was associated with a large Brazilian criminal network called the Primeiro Comando da Capital (PCC) after Oliveira told her that he had a "problem" with the PCC. *Id.* In September 2018, de Souza Pinto, her mother, aunt, and grandmother traveled to Belo Horizonte, Brazil—approximately six hours away from their home—for a consultation for her grandmother. While physically distanced, de Souza Pinto decided to end the relationship and texted Oliveira to move out. One week later, Oliveira vacated the home but

3

did not return the key. De Souza Pinto and her family later left Belo Horizonte and returned to their home.

De Souza Pinto testified that, in October 2018, Oliveira set fire to her grandmother's home after de Souza Pinto rejected—via text message—his request to restart their relationship. De Souza Pinto's family filed a police report, accusing Oliveira of arson, but police neither found Oliveira nor arrested him. Oliveira's threats of violence and harassment increased after this incident.

In 2020, de Souza Pinto gave birth to her son, Nicolas, who is not Oliveira's biological child. Because Oliveira's threats intensified to the point of threatening to kill de Souza Pinto and her son, she decided to move back to Belo Horizonte. De Souza Pinto testified that Oliveira found her new location in Belo Horizonte and sent her threatening text messages and pictures of her location. In June 2021, de Souza Pinto filed a police report in Belo Horizonte, but the threats did not abate. In December 2021, de Souza Pinto decided to leave Brazil and traveled to the United States with her aunt and minor child.

In January 2022, the Department of Homeland Security served de Souza Pinto and her minor child with a Notice to Appear in immigration court. In July 2022, de Souza Pinto timely applied for asylum, withholding of removal, and protection under the CAT. De Souza Pinto's application was

based on past persecution due to membership in the following proposed particular social groups (PSG):

(1) "Young Black Brazilian women unable to leave their domestic relationship";

(2) "Young Black Brazilian women subject to forced relationship of PCC Criminal organization members";

(3) "Brazilian women targeted by PCC criminal organization for perceived law enforcement cooperation"; and

(4) "Young women facing persecution for perceived affiliation with PCC criminal organization in Brazil."

R. I at 107–10; R. IV at 29; Op. Br. at 21 n.4.

A hearing was held on October 24, 2022, wherein de Souza Pinto testified in support of her application. The IJ found de Souza Pinto's testimony credible and determined that she had suffered past harm that rose to the level of persecution. Nevertheless, the IJ concluded that de Souza Pinto's claims—based on past persecution and a fear of future persecution—failed because there was no nexus between the persecution and any protected ground (i.e., race, political opinion, or PSG). The IJ concluded that while de Souza Pinto faced persecution from Oliveira, it was "violence related to jealousy and personal animus, not violence that would be perpetrated on account of a protected ground." R. I at 74. Ultimately, the IJ denied de Souza Pinto's application for asylum and ordered her removed to Brazil.

De Souza Pinto timely appealed to the BIA, wherein a single appellate immigration judge dismissed the appeal and affirmed the IJ's decision in a brief order. At heart, the BIA found no clear error with the IJ's findings or conclusions that de Souza Pinto (1) failed to demonstrate the requisite nexus between past or future harm from Oliveira and a protected ground and (2) did not provide sufficient evidence "demonstrating that her gender, or any other protected ground, was one central reason for the harm." *Id.* at 4–6.

## II

Regarding the three arguments made by de Souza Pinto on appeal, we begin by setting out the standard of review utilized to decide the issues now before us. For the purposes of this Order and Judgment, we will assume without deciding that de Souza Pinto has put forth at least one cognizable PSG. We then proceed to the merits of de Souza Pinto's claims, examining predominantly the issue of nexus and gender, especially because the first claim is outcome-determinative.[3]

---

[3] De Souza Pinto's application included four PSGs; the term "women" is a common characteristic of all four. The BIA focused its analysis on gender because of this common denominator. Accordingly, we do the same.

6

**A**

The BIA affirmed the IJ's decision in a brief order that was issued by a single appellate judge. *See* 8 C.F.R. § 1003.1(e)(5). Thus, "we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). We may, however, consult "the IJ's more complete explanation of those same grounds" in order to "understand the grounds provided by the BIA." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "As long as the BIA decision contains a discernible substantive discussion, however, our review extends no further, unless it explicitly incorporates or references an expanded version of the same reasoning below." *Id.*

When reviewing the agency's decision, we decide purely legal questions de novo while findings of fact are reviewed for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). Importantly, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Accordingly, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We will not reverse the BIA, however, "[e]ven

if we disagree with the Board's conclusions," if said determinations "are supported by substantial evidence and are substantially reasonable." *Kapcia v. INS*, 944 F.2d 702, 707 (10th Cir. 1991). Nevertheless, the BIA cannot "overlook evidence in the record that supports the applicant's case" or "ignore or misconstrue evidence in the asylum applicant's favor." *Karki*, 715 F.3d at 800 (quoting *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 107, 113 (3d Cir. 2010)).

## B

For de Souza Pinto to be granted asylum, she must establish, inter alia, that she is a "refugee" who is "unable or unwilling to return" to Brazil because she has been or will be persecuted "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Miguel-Pena v. Garland*, 94 F.4th 1145, 1159 (10th Cir. 2024) (quoting 8 U.S.C. §§ 1158(b)(1)(B)(i), 1101(a)(42)). "The five categories are called 'protected grounds.'" *Id.* (quoting *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015)). To establish persecution or fear thereof based on a protected ground, the applicant "must establish a 'nexus' between the alleged persecution and a protected ground." *Id.* (quoting *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010)).

The protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm," nor can it "play a minor role in the

[applicant's] past mistreatment or fears of future mistreatment." *Dallakoti*, 619 F.3d at 1268 (quoting *In re J-B-N & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)). Rather, the protected ground must be "at least one central reason for persecuting the applicant." *Miguel-Pena*, 94 F.4th at 1159 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "An applicant qualifies as a 'refugee' under the INA if membership in a social group is 'at the root of persecution,' such that membership itself generates a 'specific threat to the applicant.'" *Niang v. Gonzales*, 422 F.3d 1187, 1200–01 (10th Cir. 2005) (quoting *Gebremichael v. INS*, 10 F.3d 28, 35 (1st Cir. 1993)) (finding a nexus between female genital mutilation and persecution based on gender). Whether there is a nexus between the protected ground and persecution is a question of fact that is reviewed under the substantial evidence standard. *Miguel-Pena*, 94 F.4th at 1159.

As we previously noted, we will assume without deciding that deSouza Pinto has put forth at least one cognizable PSG. The BIA rejected de Souza Pinto's argument that the IJ clearly erred when it determined that her "gender may have made her more susceptible to violence in Brazil but found insufficient evidence demonstrating that her gender, or any other protected ground, was one central reason for the harm she suffered from her ex-

partner."[4] R. I at 4. Ultimately, the BIA determined that de Souza Pinto failed to meet her burden of establishing eligibility for asylum and, therefore, did not establish a clear probability for eligibility for withholding of removal.

## C

On appeal, de Souza Pinto argues that she is eligible for asylum and withholding of removal because she has been persecuted and has a well-founded fear of future persecution by Oliveira on the basis of, inter alia, her gender. Specifically, de Souza Pinto argues that the BIA erred by (1) requiring her to produce direct evidence of a nexus, (2) failing to consider that there might be mixed motives underlying the persecution, and (3) not addressing the IJ's finding regarding Oliveira's abuse to her family members. We address each in turn.

First, we do not read the IJ's written decision as requiring de Souza Pinto to produce direct evidence of a nexus or Oliveira's motive. While it is true that de Souza Pinto "cannot be expected to provide direct proof of [her persecutor's] motives," she is required to provide some direct or

---

[4] The BIA also affirmed the IJ's determination that de Souza Pinto did not establish "an objectively reasonable well-founded fear of persecution from members of the PCC on account of her imputed anti-PCC political opinion or her perceived cooperation with law enforcement." R. I at 5. This issue, however, is not before this court.

circumstantial evidence of it. *INS v. Elias-Zacarias*, 502 U.S. 478, 483

(1992). Indeed, during the hearing, de Souza Pinto testified:

> [Q:] And during that period of time, before October, 2018 [sic], did he ever say why he was being violent with you?
>
> [A:] No, he never tell me what -- told me why. It was always because something related to jealousy or because he was nervous.
>
> [Q:] And why do you think that he was violent towards you?
>
> [A:] For jealousy.

R. I at 151.

Later, when asked if Oliveira was sending threatening messages to

her, de Souza Pinto testified:

> [A:] Is the question while I was trying to finish with him or after I had finished with him? Because while I was telling him that I wanted to finish with him, he would only tell me that he didn't want to finish the relationship with me. But then after I finished the relationship with him was when he began to threaten me over the phone. Over messages.
>
> [Q:] And why do you think he attempted to burn down your grandmother's house?
>
> [A:] Because he didn't want to finish with me, and I finished with him. He was already an aggressive person. He had already hit me. And after this, he just wanted to kill the people who were there. He wanted to kill us.

*Id.* at 157. Moreover, de Souza Pinto testified that Oliveira's threats became

worse after she had her baby:

11

[A:] It was worse because he would tell me that my son should not have been of another man, and since "it's not my son, I will kill both of you." So that was when I had -- when I was even more fearful, because it was not only me now. I had my son. I was also afraid for my son. That was when I moved to Belo Horizonte. And I made out a report in Belo Horizonte.

*Id.* at 135.

Accordingly, the IJ found that de Souza Pinto's gender made her "more vulnerable to harm in a country where women are regularly subjected to discrimination"; however, her gender was tangential to the finding that Oliveira's jealousy and personal animosity was the impetus for the persecution. *Id.* at 74.

Verily, a persecutor can have mixed motives when targeting the victim. *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021). Nevertheless, the "protected ground must still be a central reason." *Id.* Here, the BIA did not find that the IJ clearly erred in determining that de Souza Pinto failed to establish a nexus between her abuse at the hands of Oliveira and her gender. Although de Souza Pinto attempts to argue on appeal that the inverse is true—that Oliveira's jealousy was the tangential motivation for his persecution—de Souza Pinto's own testimony supported the IJ's conclusion that her ex-boyfriend was a jealous man who had a personal animus against her for ending their relationship and continuing to reject his advances to reunite.

Ultimately, "[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang*, 422 F.3d at 1196 (quoting *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004)). In order to bring a successful appeal, de Souza Pinto needed to establish that her gender was a central reason for her persecution and convince us that no reasonable adjudicator would be compelled to conclude to the contrary. *See, e.g.*, *Aguilar v. Garland*, 29 F.4th 1208, 1211–12 (10th Cir. 2022) (holding that the BIA had substantial evidence to reject the petitioner's claim of past persecution based on gender identity because, inter alia, her uncle abused not only the petitioner but also her sister and brother and became violent when intoxicated). De Souza Pinto did not meet this demanding standard, so we are obligated to affirm the BIA.

De Souza Pinto argues on appeal that "[b]ut for her gender, she simply never would have been in the relationship that provoked physical and mental abuse, as well her former partner's attempt to kill [her]."[5] Op. Br.

---

[5] The Government argues that de Souza Pinto did not exhaust her "but-for causation" argument. Resp. Br. at 33. While de Souza Pinto concedes that she did not expressly use the phrase "but-for causation" before the BIA, we conclude that she has sufficiently exhausted the argument and presents the same legal theory, therefore, we may consider it. Reply Br. at 30–31; *see Miguel-Pena v. Garland*, 94 F.4th 1145, 1154 (10th Cir. 2024) (noting that the petitioner must present the same specific

at 11. In other words, "if she did not have certain protected characteristics, she would not have suffered abuse at the hands of Mr. Oliveira." Reply Br. at 31. There is no denying that gender is inherent within and pervades the facts in this case—especially since de Souza Pinto is a woman and moves through the world as such. We also recognize that women in Brazil are more likely to be victims of domestic violence than men. *See, e.g.*, R. II at 132–36.

De Souza Pinto, however, fails to establish that gender is one of the *central* reasons for Oliveira's past and future persecution as opposed to his personal animus. Nor does she distinguish Oliveira's "acts of common criminality or personal hostility[, which] do not implicate asylum eligibility." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003); *see also Velasquez v. Sessions*, 866 F.3d 188, 194 (4th Cir. 2017) ("[Applicants] with a well-founded fear of persecution supported by concrete facts are not eligible for asylum if those facts indicate only that the [applicant] fears retribution over purely personal matters. . . ." (citation omitted)); *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008) ("Courts have routinely rejected asylum applications grounded in personal disputes because 'without a firm footing in one of the five protected bases, asylum law offers no

---

legal theory to the BIA before arguing it to the court on appeal). That being said, de Souza Pinto's assertion that the Government waived this argument and forfeited any merits response is incorrect. The Government addressed the argument in its briefing.

succor.'"(citation omitted)); *Jun Ying Wang v. Gonzales*, 445 F.3d 993, 998 (7th Cir. 2006) ("This circuit and others, however, have repeatedly held that a personal dispute cannot give rise to a claim for asylum.").

De Souza Pinto argues that the U.S. Court of Appeals for the Sixth Circuit's decision in *Sebastian-Sebastian v. Garland*, 87 F.4th 838 (6th Cir. 2023) is instructive for this court. The Sixth Circuit held that the BIA erred because:

> [t]he BIA rejected Sebastian-Sebastian's claim without considering that her persecutors may have had mixed motives for their persecution. The BIA erroneously stopped short: It found one motive and prematurely ended its analysis there, ignoring the fact that a "conclusion that a cause of persecution is [personal] does not necessarily imply that there cannot exist other causes of persecution."

*Sebastian-Sebastian*, 87 F.4th at 848 (quoting *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994)). That is not the case here. Rather, the IJ and the BIA took into consideration both de Souza Pinto's gender and the issue of jealousy but ultimately concluded—in part based on de Souza Pinto's own testimony—that Oliveira's personal animus and jealousy were the central impetus for the persecution and not her gender. Here, the IJ did consider possible mixed motives and, therefore, fully considered whether de Souza Pinto's persecution had a nexus to a protected ground.

At bottom, de Souza Pinto's own testimony supports the IJ's conclusion that Oliveira was jealous and angry that she had ended the

relationship, evicted him from her family's home, refused to resume the relationship, had another relationship with another person, and gave birth to a child that was not his. Thus, we conclude that substantial evidence supports the IJ's findings, and the BIA did not err when finding that de Souza Pinto failed to establish a nexus between the persecution and her gender. Because this conclusion is fatal to de Souza Pinto's appeal, we decline to address her remaining arguments.[6]

## III

We are mindful of the interconnection between gender, jealousy, and domestic violence. Nor are we oblivious to the reality that domestic violence disproportionately affects women. De Souza Pinto, however, did not meet her burden of establishing that she was entitled to asylum.

---

[6] De Souza Pinto did not present an argument in her opening brief challenging the denial of her application for protection under the CAT. Accordingly, this issue has been waived. Counsel for de Souza Pinto also conceded that her CAT claim was waived during oral argument. Furthermore, an applicant who cannot establish an asylum claim "will necessarily fail to meet the higher burden of proof required for withholding of removal" under the INA or CAT. *Uanreroro*, 443 F.3d at 1202; *see also Rodas-Orellana v. Holder*, 780 F.3d 982, 987 (10th Cir. 2015) ("Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim."). Consequently, de Souza Pinto's withholding claim is nonviable.

For the foregoing reasons, we **DENY** the petition for review.

Entered for the Court

Richard E.N. Federico
Circuit Judge