**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 13, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

MARTHA LILIANA PICON-DIAZ;
S.Y.A P.; D.S.A.P.; H.S.A.P.;
HERNANDO JOSE ANAYA-CAUSIL,

    Petitioners,

v.

PAMELA J. BONDI, United States
Attorney General,

    Respondent.

No. 25-9530
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Petitioners seek review of a final removal order the Board of Immigration

Appeals ("BIA") issued upholding an immigration judge's ("IJ") denial of their

applications for asylum and withholding of removal.[1]  Exercising jurisdiction under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Petitioners also sought relief under the Convention Against Torture ("CAT"), which the IJ denied.  The BIA found that they waived arguments related to CAT

8 U.S.C. § 1252(a), we deny their petition for review.  We also warn Petitioners'
counsel about his citation to and reliance on what appears to be a fabricated Tenth
Circuit case.

## I.  BACKGROUND

Petitioners are a family of five:  Martha Picon-Diaz, her husband Hernando
Anaya-Causil, and their three minor children.  Petitioners are citizens of Colombia
who entered the United States in 2023.  The Department of Homeland Security issued
them notices to appear, charging them with being present in the United States without
being admitted or paroled, or having arrived in the United States at any time or place
other than as designated by the Attorney General, in violation of 8 U.S.C.
§ 1182(a)(6)(A)(i).

An IJ sustained the charges, and Petitioners applied for asylum and
withholding of removal.  They appeared for a hearing before the IJ pro se.  Martha
and Hernando identified four reasons they fear returning to Colombia.  First, in 2020,
Hernando's uncle, Jose, who owned a store, was shot by members of an illicit or
illegal group because he stopped paying them extortion.  Jose continues to receive
threats that if he does not pay the extortion, he and his family will see consequences,
so he continues to pay.  Second, in early 2022, a young man in Petitioners'
neighborhood named Tito and another young neighborhood kid, who were using
drugs and stealing, threatened their oldest child, once with a knife and several times

---

protection, and Petitioners do not make any CAT arguments before this court.  We
therefore limit our discussion to the denial of asylum and withholding.

verbally, because Tito did not want to see the child out on the streets.  Third, Martha's brother was kidnapped for one day and robbed of his money.  He came to the United States in 2024 because the kidnappers continued to bother him.  And fourth, guerrillas try to recruit children for combat, illicit groups rob people, and a drug cartel tries to force children to sell drugs, making the entire country a dangerous place for Petitioners to live.  Hernando also testified that he does not vote because he does not want problems with groups against whom he might vote, and Martha testified about the same fear but said she had voted against the current president.

The IJ found Petitioners' testimony credible but denied relief.  Regarding asylum, the IJ determined that Petitioners had not shown past persecution because the threats to the son were not severe enough to qualify as persecution, Martha and Hernando had not been threatened, and none of the Petitioners had been harmed.  The IJ also determined that Petitioners failed to demonstrate a nexus between their fear of returning to Colombia and a statutorily protected ground—"race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)).  The IJ found that the threats to the son were because "the criminal element in their neighborhood" wanted him to "stay out of the way," and what had happened to the uncle was "based on failed extortion demands and not on account of any identified group or protected ground that the [IJ could] decipher."  R. vol. 1 at 49.  The IJ found that the testimony about voting did not amount to a political opinion, but even if it did, there was no evidence "that anything would happen on account of" it.  *Id.*

3

Because the requisite nexus was lacking, the IJ concluded that Petitioners could not establish either past persecution or a well-founded fear of future persecution. The IJ further concluded that because Petitioners could not make the showing required for asylum, they necessarily could not meet the higher standard required for withholding of removal.

Petitioners obtained counsel and appealed to the BIA. The BIA upheld the IJ's lack-of-nexus finding because the IJ had permissibly found that the threats to the son were on account of a "criminal element" and the threats to the uncle "were based on failed extortion demands." *Id.* at 4–5 (internal quotation marks omitted). The BIA rejected Petitioners' claim that they were "the 'family of a primary target of a criminal organization' and this was 'a characteristic that the criminal group was *likely* to use to [its] advantage to punish the uncle into using his money to support the criminal group.'" *Id.* at 5 (emphasis added) (brackets omitted) (quoting R. vol. 2 at 306). The BIA reasoned that "a 'likely' motivation" was insufficient to "establish [that] a protected ground was one central reason for future persecution, as opposed to criminal extortion efforts." *Id.* Accordingly, the BIA dismissed the appeal.

## II. STANDARD OF REVIEW

Because a single BIA member upheld the IJ's decision in a brief order, we review the BIA's decision, but "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008–09 (10th Cir. 2012) (internal quotation marks omitted). We review the BIA's legal conclusions

de novo. *Miguel-Pena v. Garland*, 94 F.4th 1145, 1153 (10th Cir. 2024). We review factual findings, including whether the petitioner established the requisite nexus between their fear of persecution and a protected ground, for substantial evidence. *Id.* at 1159. Under the substantial evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III.  LEGAL STANDARDS

To qualify for asylum, an applicant must be a "refugee," 8 U.S.C. § 1158(b)(1)(B)(i)—"unable or unwilling to return" to the applicant's country of nationality or habitual residence "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42). "These five categories are called 'protected grounds.'" *Miguel-Pena*, 94 F.4th at 1159 (internal quotation marks omitted).

To show persecution or fear of persecution "on account of" a protected ground, § 1101(a)(42), an asylum applicant must establish a "nexus" between the alleged persecution and a protected ground, *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). The protected ground must be "at least one central reason for persecuting the applicant." § 1158(b)(1)(B)(i). "[I]t cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021) (internal quotation marks omitted). "[E]ven when the protected ground is intertwined with unprotected reasons, the

5

protected ground must still be a central reason." *Id.* (internal quotation marks omitted). If "there [is] no evidence that the [persecutor] would be hostile toward the targeted [individuals] absent their financial or recruitment motives," then there is no nexus to a protected ground. *Id.* at 858.

"The burden of proof for [withholding of] removal is higher than for asylum." *Dallakoti*, 619 F.3d at 1267. It requires a showing that the applicant's "life or freedom would be threatened" in the proposed country of removal on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A).

## IV. MERITS DISCUSSION

Petitioners first argue that both the IJ and the BIA erred by failing to recognize that they established a valid particular social group, which they define as "members of a family that had already been targeted by criminal organizations in Colombia," Pet'rs' Br. at 14, and "family relationship to an individual who had resisted extortion," *id.* at 16. They allege that in a case they identify as *Rodriguez-Romero v. Garland*, 60 F.4th 1283 (10th Cir. 2023), this court "rejected a similar conclusion where the agency ignored credible testimony that the petitioner was targeted due to his family's resistance to cartel extortion," Pet'rs' Br. at 14 (citing 60 F.4th at 1290), and "held that the agency must give 'reasoned consideration' to facts in the record that support a viable legal theory, even if not perfectly framed," *id.* at 23 (purportedly quoting 60 F.4th at 1290–91), "especially when applicants are unrepresented," *id.* at 12 (citing 60 F.4th at 1290).

6

But as the government notes in its response brief, there is no Tenth Circuit case captioned "*Rodriguez-Romero v. Garland*."  The Federal Reporter citation "60 F.4th 1283" leads to a page in *United States v. Wesley*, 60 F.4th 1277 (10th Cir. 2023), a case involving whether a criminal defendant's motion for compassionate release was an unauthorized second or successive motion to vacate his sentence, *see id.* at 1279–80.  And the pincites to pages 1290 and 1291 of this supposed decision lead to pages in *United States v. Diaz-Menera*, 60 F.4th 1289 (10th Cir. 2023), which involved a criminal defendant's challenge to his sentence, *see id.* at 1291.  Petitioners' counsel relies on or quotes from this apparently fictitious *Rodriguez-Romero* case multiple other times in his brief.  *See* Pet'rs' Br. at 8, 9, 11, 15, 18, 19, 22.

Petitioners' counsel did not file a reply brief, where he might have explained this fabricated citation.  If counsel made a citation error, we have not been able to deduce what it might be.  We have not uncovered any relevant federal case similarly captioned or containing any of the quotations that counsel attributes to this apparently nonexistent case.[2]

This case citation and the quotations and propositions attributed to it appear fabricated.  This is likely the result of Petitioners' counsel's use of a generative

---

[2] There is an unpublished Tenth Circuit case captioned *Romero v. Garland*, where the petitioner's full name is "Marco Tulio Rodriguez Romero."  *See* No. 21-9515, 2021 WL 6061846 (10th Cir. Dec. 20, 2021).  That case, however, does not contain any of the quotations Petitioners' counsel attributes to the *Rodriguez-Romero* case he cites or have any other relevance to any of counsel's arguments in this case.

artificial intelligence tool as a research and drafting aid without adequate review of the results the tool generated. *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 497 (D. Wyo. 2025) ("It is . . . well-known in the legal community that AI resources generate fake cases."). Such fabrications are often referred to as "AI [h]allucinations," which happen "when an AI [model] generates fake sources of information." *Id.* at 493 (internal quotation marks omitted). We must, of course, disregard Petitioners' reliance on this case.[3]

So doing, we disagree with Petitioners' argument regarding recognition of a particular social group. Although the IJ said she could not "decipher" any particular social group, R. vol. 1 at 49, the BIA considered Petitioners' claim "that they were the 'family of a primary target of a criminal organization,' and this was 'a characteristic that the criminal group was likely to use to [its] advantage to punish the uncle into using his money to support the criminal group,'" *id.* at 5 (brackets omitted) (quoting *id.* at 23). Thus, the BIA acknowledged the group Petitioners identified but, as we proceed to address, found there was no nexus between their feared harm and a protected ground.[4]

---

[3] We reserve discussion of whether to sanction Petitioners' counsel until Part V of our decision.

[4] The government argues that the BIA did not make a finding that the group was cognizable as a particular social group within the meaning of the immigration laws. We need not decide whether the government is correct because it appears the BIA assumed Petitioners' proposed group was cognizable for purposes of concluding that there was no nexus between their fear and the proposed group.

Petitioners next argue that the BIA erred in determining that any harm they fear is due to criminal activity and not on account of their membership in the particular social group they had identified. They claim their "testimony established a clear temporal and familial link between the uncle's targeting and the threats directed at Petitioners and their children." Pet'rs' Br. at 17. They also contend that the IJ and BIA disregarded testimony that, after the uncle's shooting, "individuals linked to criminal groups began to threaten [their] son directly." *Id.* at 18. Petitioners add that they were targeted because of their familial relationship to "someone perceived as defiant to a criminal organization" because "the threats in this case followed [the] uncle's resistance to extortion and his subsequent shooting." *Id.* at 19. Petitioners further argue that the BIA misapplied the "one central reason" standard because "[t]hat standard does not require a persecutor to expressly declare their motives but allows adjudicators to consider indirect evidence, including the sequence of events, patterns of threats, and the broader social and political context." *Id.* at 23–24.

This line of argument fails to persuade us that the BIA erred.

First, Petitioners never testified that there was any link between the uncle's shooting in 2020 and the threats to their son in 2022, so there is no evidence that would support a finding that the threats to their son were on account of their family membership to the uncle.

Second, the IJ and the BIA considered the circumstantial evidence Petitioners claim is relevant to their application, so there was no misapplication of the "one central reason" standard.

Third, Petitioners' argument is contrary to our decision in a factually analogous case, *Orellana-Recinos*.  There, gang members repeatedly threatened a mother that she and her son would "pay" if the son refused to join the gang and sell drugs.  993 F.3d at 853 (internal quotation marks omitted).  We assumed the mother's membership in her son's immediate family qualified as a particular social group under the immigration laws.  But we concluded that membership in that group was not one central reason for the mother's fear of future persecution because the IJ and the BIA "could properly infer that the gang's ultimate motivation was to recruit [the son], not to attack his family," and could reasonably "find that the gang members had no animus against [the] family per se."  *Id.* at 858.  We further noted that if the son were to join the gang, there was no evidence the gang would still pursue the mother or any other member of the son's immediate family.  *Id.*

The same can be said here.  As in *Orellana-Recinos*, there is no evidence that the extortionists would attempt to harm any of the Petitioners absent their motivation to obtain payment from the uncle.  The extortionists threatened to harm the uncle's family if he did not pay, so any animus against Petitioners was contingent on nonpayment.  Hernando testified that the uncle continues to pay and that, other than Tito's unrelated threats to the son, Petitioners have not been harmed or directly threatened.  We therefore conclude that the record evidence does not compel the conclusion that Petitioners' family membership was one central reason for their fear of future persecution rather than incidental or tangential to the extortionists' ultimate goal of general criminality and financial gain.

Finally, Petitioners argue that the IJ failed to develop the record by not trying "to elicit testimony or clarify whether [they] sought protection based on family membership, resistance to extortion, or imputed political opinion—legal theories plainly suggested by their testimony." Pet'rs' Br. at 20. The government argues that we should decline to consider this argument because Petitioners did not present it to the BIA. We agree with the government.

We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Under § 1252(d)(1), "issue exhaustion is a mandatory [and non-jurisdictional] claim-processing rule that should be enforced where a party timely and properly objects." *Miguel-Pena*, 94 F.4th at 1155 (brackets, ellipsis, and internal quotation marks omitted). "We enforce the exhaustion requirement by declining to consider the unexhausted issue." *Id.*

To administratively exhaust an issue, "an alien must present the *same specific legal theory* to the BIA." *Id.* at 1154 (internal quotation marks omitted). Petitioners never presented the BIA with their theory that the IJ failed to develop the record regarding the nature of the protected ground. Instead, they argued that the IJ should have deduced the relevant particular social group from their testimony. *See* R. vol. 1 at 25 (arguing that "the IJ committed legal error when she failed to properly interpret [Petitioners'] particular social groups from the facts presented"); *id.* at 26 (admitting that "the IJ asked thorough questions regarding the events," then arguing that "by

11

posing the particular social group question[5], the IJ had a responsibility to read between the lines based on the information she was presented and determine if a particular social group was proposed"). Thus, whether the IJ adequately developed the record is unexhausted, so we decline to consider it.

## V. WARNING TO COUNSEL

As discussed, Petitioners' counsel relied multiple times throughout his brief on what clearly appears to be a case fabricated by the use of a generative artificial intelligence tool. There is nothing inherently problematic with the use of artificial intelligence in the practice of law, but its careless use can waste both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023). Importantly here, "'[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (quoting *Mata*, 678 F. Supp. 3d at 461). Such conduct is sanctionable. *See, e.g.*, *id.* at 615–16; *Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024); Fed. R. App. P. 38; 10th Cir. R. 46.5(B), (C). However, we decline to sanction counsel in this case but warn him—and all attorneys practicing before this court—of the responsibility to ensure that citations to legal

---

[5] The IJ informed Hernando that to be eligible for asylum, Petitioners would have to show their fear of persecution was on account of a protected ground, one of which was membership in a particular social group.

authority are not fabrications but instead point to real cases that contain quotations attributed to them and arguably stand for the propositions for which they are cited.

## VI.  CONCLUSION

We deny the petition for review.  We grant Petitioners' counsel's motion to withdraw (Dkt. No. 25).

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge